# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| BRUCE CAMERON, TIFFANY WALKER, CHRISTOPHER EVEN, JAMES BISH, and SHERRY OLSON, individually, | Case No.:  CV-09-423-REB |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **(1)  MOTION TO DETERMINE THE NON-APPLICABILITY OF I.C. § 6-610 AND, IN THE ALTERNATIVE, TO SET AMOUNT OF SURETIES** |
| OWYHEE COUNTY, OWYHEE COUNTY SHERIFF'S OFFICE, and SHERIFF DARYL CRANDALL, | **(Docket No. 15)** |
| Defendants. | **(2) DEFENDANTS' MOTION TO BIFURCATE PROCEEDINGS; ALTERNATIVE MOTION TO SEVER** |
| | **(Docket No. 17)** |

Currently pending before the Court is (1) Plaintiffs' Motion to Determine the Non-Applicability of I.C. § 6-610 and, in the Alternative, to Set Amount of Sureties (the "Motion to Determine Bond Amount") (Docket No. 15); and (2) Defendants' Motion to Bifurcate Proceedings; Alternative Motion to Sever (the "Motion to Bifurcate") (Docket No. 17).  Having

**MEMORANDUM DECISION AND ORDER - 1**

carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  BACKGROUND

This case involves five individual Plaintiffs, each of whom worked as employees of Defendant Owyhee County, within the Defendant Owyhee County Sheriff's Office, at the beginning of 2009.  According to Plaintiffs, they were terminated and/or reassigned for supporting former Owyhee County Sheriff Gary Aman in the 2008 Owyhee County Sheriff election, following Defendant Sheriff Daryl Crandall's eventual assumption of that same office in January 2009.  The particular claims need not be parsed to resolve the two motions now before the Court; suffice it say, Plaintiffs' Complaint centers on Defendants' alleged improper employment actions.

Through their Motion to Determine Bond Amount, Plaintiffs move this Court for a determination of the non-applicability of Idaho Code section 6-610 or, alternatively, to have this Court set the amount of the written undertakings pursuant to that same section.  *See* Mot. to Determine Bond Amt., p. 1 (Docket No. 15).

Through their Motion to Bifurcate, Defendants seek to retain the action on a more-or-less consolidated basis, but to "administratively bifurcate" the claims into five sub-cases (one case for each Plaintiff) against Defendants for the purposes of dispositive motions and, ultimately, trial.  *See* Mot. to Bifurcate, p. 2 (Docket No. 17).  Alternatively, Defendants request that Plaintiffs Tiffany Walker, Christopher Even, James Bish, and Sherry Olson be severed from this lawsuit, leaving only Bruce Cameron as a named Plaintiff - consenting that any subsequently-filed actions be referred to the undersigned and that the actions' discovery be consolidated.  *See id*. at pp. 2-3.

**MEMORANDUM DECISION AND ORDER - 2**

## II.  ANALYSIS

**A.      Motion to Determine Bond Amount**

   1.      Idaho Code Section 6-610 Applies to Plaintiffs' State Law Claims Against
           Defendant Crandall

Before any civil action is instituted against a law enforcement officer, Idaho Code section

6-610(2) contemplates the filing of a "written undertaking" with the court.  *See* I.C. § 6-610(2)

("Before any civil action may be filed against any law enforcement officer . . . when such action

arises out of, or in the course of the performance of his duty, . . ., the proposed plaintiff . . ., as a

condition precedent thereto, shall prepare and file with, and at the time of filing the complaint or

petition in any such action, a written undertaking with at least two (2) sufficient sureties in an

amount to be fixed by the court.").  With Idaho Code section 6-610(2) in mind, the sole issue

now is whether Plaintiffs' state law claims against Defendant Crandall[1] can survive, given

Plaintiffs' undisputed failure to file the requisite sureties prior to bringing this action.

 Taking a literal reading of the statute, Plaintiffs argue that their claims "do not arise out

of Defendants' duties as law enforcement officers."  *See* Mot. to Determine Bond Amt., p. 2

(Docket No. 15. Att. 1); *see also* Reply in Supp. of Mot. to Determine Bond Amt., p. 2 (Docket

No. 20) ("In other words, [Defendant Crandall's] actions in terminating the Plaintiffs did not

relate to his 'duty of enforcement of the criminal, traffic or penal laws of this state.'" (citing I.C.

§ 6-610(1))).  Defendants naturally disagree, stating in no uncertain terms that Defendant

Crandall's alleged actions took place while he was employed as a law enforcement officer and

that Plaintiffs cannot "provide any rationale to explain how an employment decision by a sheriff

---

   [1]  The parties agree that Idaho Code section 6-610 potentially applies only to those state
law claims against Defendant Crandall and not the other two named Defendants.

**MEMORANDUM DECISION AND ORDER - 3**

relating to his or her department employees within the sheriff's office does not qualify as an act that 'arises out of, or in the course of the performance of his duty' as a law enforcement officer." *See* Opp. to Mot. to Determine Bond Amt., pp. 3-4 (Docket No. 18).  The Court agrees with Defendants.

While Idaho Code section 6-610(2) does not speak to the issue highlighted within the parties' briefing - namely, the meaning of "in the course of the performance of his duty," as that term is used in the statute - the Court is guided by case law within the District relevant to this inquiry.  For example, in *Wisdom v. Centerville Fire District, Inc.*, U.S. District Judge Edward J. Lodge applied Idaho Code section 6-610 to a defendant deputy's conduct and, in doing so, shed light on the analysis that must take place, commenting:

> "Acts that are within the scope of employment are 'those acts which are so closely connected with what the servant is supposed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of employment.'" "An employee's conduct is within the scope of employment if 'it is of the kind which he is employed to perform, occurs substantially within the authorized limits of time and space, and is actuated, *at least in part*, by a purpose to serve the master.'"

*See Wisdom*, 2008 WL 4372009, *14 (D. Idaho 2008) (internal citations omitted) (italics in original).  Likewise, in *Chaffin v. Shoshone Co., Idaho*, U.S. Magistrate Judge Mikel Williams found that a defendant sheriff's decision to reassign plaintiff to duties as a detention deputy (versus a patrol deputy) implicated Idaho Code section 6-610(2) and required the posting of a bond.  *See Chaffin*, 2005 WL 3307214, *2 (D. Idaho 2005)

Here, while not in the typical law enforcement sense, it is difficult for the Court to accept that Defendant Crandall's conduct is (1) not within the scope of his employment or, for that

**MEMORANDUM DECISION AND ORDER - 4**

matter, (2) not in the course of the performance of his duty.  Indeed, within their Complaint,

Plaintiffs themselves assert that "[a]t all relevant times Defendant Crandall was an employee of

the Defendants, either as a deputy or as the Sheriff, acting on behalf of the Defendants within the

course and scope of his employment."  *See* Compl., ¶ 15 (Docket No. 1).  These realities,

coupled with the holdings in *Wisdom* and *Chaffin* (*see supra* at p. 4), and Plaintiffs' inability to

offer any persuasive reason why their claims should be excepted from Idaho Code section 6-

610(2)'s bond requirement,[2] warrant the denial of Plaintiffs' Motion to Determine Bond Amount

on this discrete point.  Simply put, a written undertaking/bond is required.

> 2.      Plaintiffs' Failure to File a Written Undertaking Does Not Warrant Dismissal at
>         this Time

Upon a defendant's objection to a plaintiff's failure to post a bond, "the judge shall

dismiss the case."  *See* I.C. § 6-610(5); *see also* Opp. to Mot. to Determine Bond Amt., pp. 5-6

(Docket No. 18).  Despite what appears to be a statutory mandate for dismissal, this District has

permitted delinquent bond postings.  *See, e.g.*, *Ramirez v. City of Ponderay*, 2008 WL 907382

(D. Idaho 2008) (requiring plaintiff to obtain requisite statutory securities within twenty days of

order denying defendant's motion to dismiss)*; Walker v. City of Post Falls*, 2007 WL 2609899

(D. Idaho 2007) (same).  The opposite is true too.  *See,* e.g., *Ayala v. U.S.*, 2010 WL 299153 (D.

Idaho 2010) (dismissing plaintiffs' state law claims as to defendant law enforcement officers for

failure to file bond).

However, the undersigned is concerned about the implications that may befall an

unknowing plaintiff who fails to secure a bond before instituting a state action against a law

---

[2] Plaintiffs implicitly acknowledged the *potential* need to file a written undertaking,
having already attempted to secure a bond in November 2009, only to be unable to locate any
bonding company that underwrites such bonds.  *See* Harr Aff. at ¶¶ 3-6 (Docket No. 15, Att. 2).

**MEMORANDUM DECISION AND ORDER - 5**

enforcement officer - in essence, ending a claim before it even begins.  Without now resolving

these potential constitutional issues, in the Court's mind, Idaho Code section 6-610's purpose in

discouraging unfounded claims is not ignored when it later orders that a sum certain be posted to

satisfy the statute's security precondition, particularly when recognizing that Plaintiffs' attempt

at securing a bond were previously rejected by four surety companies hesitant to underwrite an

open-ended bond.  *See* 11/18/09 e-mail from Denny Price to Amy Stack, attached Harr Aff. at

¶ 6 (Docket No. 15, Att. 2) ("[A]ll of the Surities I contacted would not issue a surety bond

unless they have the right to know the amount of the bond prior to obligating themselves and the

right to underwrite the individuals being bonded.").  In short, the vagaries of a changed surety

market should not dictate whether a claim can be brought in federal court under these

circumstances.[3]  A delayed bond will still provide the protection envisioned when Idaho Code

--------

[3]  In *Estate of Young v. County of Boundary*, Chief U.S. District Judge B. Lynn Winmill
shared similar concerns when discussing Idaho Code section 6-610's bond requirement on the
plaintiff's motion to reconsider:

> The statute, Idaho Code § 6-610, while requiring a written
> undertaking with at least two sufficient sureties as a condition
> precedent to filing the suit, also requires that the amount of the
> sureties be established by the Court.  This is an anomaly, since a
> judge is not assigned to a case until after it is filed.  The statute does
> not outline or prescribe a procedure which would permit a judge to
> determine a bond amount in advance of the plaintiff's filing of a
> complaint.  In the absence of such a procedure it is difficult to see
> how a plaintiff could comply with the statute.  Moreover, even if the
> statute prescribed such a procedure, it may not be applicable in
> federal court proceedings.  Nevertheless, the Idaho case law suggests
> that dismissal is mandatory if the bond is not posted in advance of the
> filing of the complaint by a non-indigent plaintiff.

*See Estate of Young*, 2008 WL 564972, *2 (D. Idaho 2008).  In re-evaluating the claims, Judge
Winmill dismissed the plaintiff's state law claims for altogether different reasons.  *See Young v.
County of Boundary*, 2008 WL 38774637 (D. Idaho 2008) ("[T]he Court is now dismissing the
state law claims for other reasons.  Accordingly, the motion to reconsider is moot.").

**MEMORANDUM DECISION AND ORDER - 6**

section 6-610 was enacted; accordingly, one will be set via this Memorandum Decision and Order.

Consistent with Judge Lodge's discussion and handling of similar matters in *Ramirez* and *Walker* (*see supra* at p. 5), the Court finds an appropriate bond amount in this case to be $5,000 per Plaintiff, for a total of $25,000, to be secured and posted within 21 days of this Memorandum Decision and Order.

**B.      Motion to Bifurcate**

Be it through bifurcation or severance, Defendants seek to compartmentalize each of Plaintiffs' claims, arguing that a single consolidated action unfairly prejudices their defense, while potentially contributing to jury confusion. *See* Mem. in Supp. of Mot. to Bifurcate, pp. 3-6 (Docket No. 17, Att. 1). Plaintiffs disagree. *See* Opp. to Mot. to Bifurcate, pp. 1-8 (Docket No. 19). The standard for such relief is undisputed; as is this Court's discretion.

There is no question that a body of factual information is common to all claims; at the same time, there are legitimate differences as well. The Court recognizes the potential for prejudice and jury confusion under such circumstances, but will defer ruling on Defendants' Motion to Bifurcate until after any dispositive motions are resolved. At that time, the parties, their counsel, and this Court will have a better idea of the claims that will be proceeding to trial and, therefore, a more complete picture of the arguments in favor of and against bifurcation or severance.[4] Defendants' Motion to Bifurcate is therefore denied, without prejudice.

---

[4] During oral argument the Court also suggested that the parties may wish to pursue separate settlement conferences as to each Plaintiff to help narrow issues for trial. If, in fact, the parties agree to such a procedure, they are advised to contact Susie Boring-Headlee at 334-9373, remembering that, pursuant to the Case Management Order (Docket No. 11), such scheduling should also be coordinated with Chief Magistrate Judge Candy Dale's Chambers through Amy Hickox, Judge Dale's courtroom deputy, at 334-9387.

**MEMORANDUM DECISION AND ORDER - 7**

Still, with respect to dispositive motions only, the Court sees the merit in separating out Plaintiffs' anticipated briefing - that is, devoting individual motions for summary judgment to each Plaintiff, if necessary. Originally, the Court was prepared to outline the process for just such a briefing protocol; however, with the benefit of time and more thought, it would appear to make good sense for the parties' counsel themselves to develop a stipulated briefing protocol for dispositive motions, keeping in mind the Case Management Order (Docket No. 11), the District's Local Rules, specifically Local Rule 7.1, and being mindful of the Court's preference for maintaining strict page limitations, particularly when taking into account the very real possibility of the Court needing to consider five motions for summary judgment. The parties are ordered to submit the above-referenced stipulation on or before July 9, 2010.

### III.  ORDERED

Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiffs' Motion to Determine the Non-Applicability of I.C. § 6-610 and, in the Alternative, to Set Amount of Sureties (Docket No. 15) is DENIED. The Court finds an appropriate bond amount in this case to be $5,000 per Plaintiff, for a total of $25,000, to be secured and posted within 21 days of this Memorandum Decision and Order.

2.      Defendants' Motion to Bifurcate Proceedings; Alternative Motion to Sever (the "Motion to Bifurcate") (Docket No. 17) is DENIED, without prejudice.

DATED:  **June 22, 2010**

_____

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 8**