# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| BRUCE CAMERON, TIFFANY WALKER, CHRISTOPHER EVEN, JAMES BISH, and SHERRY OLSON, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>OWYHEE COUNTY, OWYHEE COUNTY SHERIFF'S OFFICE, and SHERIFF DARYL CRANDALL,<br><br>Defendants. | Case No.: CV-09-423-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: OWYHEE COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Docket No. 32) |

Currently pending before the Court is the Defendants' Motion for Summary Judgment (Docket No. 32). Having carefully reviewed the record, participated in oral argument and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

### A. Factual Background

This case involves five individual Plaintiffs – each of whom worked as employees of Defendant Owyhee County, within the Defendant Owyhee County Sheriff's Office, at the beginning of 2009. According to Plaintiffs, they were terminated and/or reassigned for openly supporting former Owyhee County Sheriff Gary Aman in the 2008 Owyhee County Sheriff election, following Defendant Sheriff Daryl Crandall's eventual assumption of that same office in January 2009. *See* Pls.' Compl. at ¶ 36, p. 7 (Docket No. 1) ("The employment of each Plaintiff was involuntarily terminated or significantly altered because of his or her public support

for the incumbent Sheriff and his or her exercise of free speech rights. Other adverse actions were taken by Defendant Crandall in which the Plaintiffs' speech was a substantial or motivating factor."). Plaintiffs in turn asserted twelve claims against Defendants: (1) breach of contract; (2) wrongful discharge in violation of public policy; (3) breach of covenant of good faith and fair dealing; (4) breach of implied contract of employment; (5) breach of implied contract provision not to terminate without just cause; (6) 42 U.S.C. § 1983 - free speech; (7) 42 U.S.C. § 1983 - due process; (8) intentional infliction of emotional distress (Plaintiff Walker); (9) negligent infliction of emotional distress (Plaintiff Walker); (10) defamation; (11) constructive discharge (Plaintiff Olson); and (12) public disclosure of private facts. *See id* at ¶¶ 52-166.

**B.      Procedural Background**

On December 2, 2009, Plaintiff moved for a determination of the non-applicability of Idaho Code § 6-610 or, alternatively, to have this Court set the amount of the written undertakings pursuant to that same section. *See* Mot. to Determine Bond Amt., p. 1 (Docket No. 15). On June 22, 2010, the Court determined that Idaho Code § 6-610 applied to Plaintiffs' state law claims against Defendant Crandall and, further, ordered "an appropriate bond amount to be $5,000 per Plaintiff, for a total of $25,000, to be secured and posted within 21 days of th[e] Memorandum Decision and Order." *See* 6/22/10 MDO, p. 7 (Docket No. 25). Plaintiffs were therefore required to secure and post the above-referenced bond by July 13, 2010. Plaintiffs failed to post any bond by July 13, 2010.

On August 12, 2010, Defendants moved to dismiss Defendant Crandall, arguing that Plaintiffs' failure to secure and post the requisite bond warranted the dismissal of Plaintiffs' state law claims against Defendant Crandall. *See* Mot. to Dismiss (Docket No. 28). Pursuant to this

**MEMORANDUM DECISION AND ORDER - 2**

District's briefing protocol, Plaintiffs' response to Defendants' Motion to Dismiss was due on or before September 7, 2010. Plaintiffs failed to respond. Therefore, on October 27, 2010, the Court dismissed Plaintiffs' state law claims against Defendant Crandall without prejudice. *See* 10/27/10 Order (Docket No. 29).

Despite the dismissal of Plaintiffs' state-law claims against Defendant Crandall individually, it appears that Plaintiffs' Complaint nonetheless asserts the same twelve claims against the remaining two Defendants - Owyhee County and the Owyhee County's Sheriff's Office. These Defendants now move for summary judgment, arguing that (1) Plaintiffs' contract-based, state law claims (and due process claim) should be dismissed largely because Plaintiffs were at-will employees,[1] and (2) Plaintiffs' federal claims should be dismissed because (A) Plaintiffs' conduct was not a substantial or motivating factor for Defendants' employment

---

[1] The scope of Defendants' Motion for Summary Judgment is not immediately clear. On the one hand, Defendants state that "[t]hese state counts were dismissed by this Court's Order given Plaintiffs' failure to post a bond as required by Idaho Code § 6-610," but later state that they "seek summary judgment on all counts, state and federal, in the Complaint." *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 3 n.1 (Docket No. 32, Att. 1). Similarly, although arguing that "the two federal counts are the central focus of this briefing" (and corresponding the "legal basis of the motion for summary judgment" exclusively to Plaintiffs' federal claims), Defendants go on to argue that nearly all of Plaintiffs' state-law claims (albeit with no mention of Plaintiffs' defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and public disclosure of private facts claims) fail as a matter of law because Plaintiffs were at-will employees. *See id; see also id*. at p. 15. Moreover, as to Plaintiffs' state-law claim of wrongful discharge in violation of public policy, Defendants argue that it is alleged only as against Defendant Crandall and, therefore, has already been dismissed by this Court. *See id*. at 15 n.5. Despite this lack of clarity, the Court understands (following Plaintiffs' counsel's representations during oral argument) that, while no state-law claims are presently asserted against Defendant Crandall by virtue of the Court's October 27, 2010 Order, Plaintiffs nonetheless originally attempted to assert all 12 claims against the remaining two Defendant entities – Owyhee County and the Owyhee County Sheriff's Office. With this in mind, the Court further understands that, through their Motion for Summary Judgment, Defendants seek not only the dismissal of the two federal claims against Defendant Crandall himself, but all 12 claims (the state-law and federal claims) against Defendants Owyhee County and the Owyhee County Sheriff's Office.

**MEMORANDUM DECISION AND ORDER - 3**

actions; (B) Plaintiffs would have been terminated based on efficiency and/or effectiveness considerations in any event; and (C) Defendant Crandall is entitled to qualified immunity.

## II.  DISCUSSION

### A.  Preliminary Statement Re: Claims and Parties

On October 27, 2010, the undersigned dismissed the state-law claims against Defendant Crandall.  *See supra* at pp. 2-3.  Therefore, the only claims that currently exist against Defendant Crandall individually are Plaintiffs' Sixth and Seventh Causes of Action – 42 U.S.C. § 1983 - free speech; and 42 U.S.C. § 1983 - due process.

During the May 10, 2011 hearing on Defendants' Motion for Summary Judgment, Plaintiffs' counsel agreed to dismiss Defendant Owyhee County Sheriff's Office, representing to the Court that the allegations/claims against Defendant Owyhee County Sheriff's Office represent the same allegations/claims against Defendant Owyhee County.  Therefore, no claims exist as to Defendant Owyhee County Sheriff's Office.

At that time, Plaintiffs' counsel also agreed to dismiss the Tenth Cause of Action - Defamation.  Therefore, the only claims that currently exist against Defendant Owyhee County are Plaintiffs' First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh, and Twelfth Causes of Action – breach of contract; wrongful discharge in violation of public policy; breach of covenant of good faith and fair dealing; breach of implied contract of employment; breach of implied contract provision not to terminate without just cause; 42 U.S.C. § 1983 - free speech; 42 U.S.C. § 1983 - due process; intentional infliction of emotional distress (Plaintiff Walker); negligent infliction of emotional distress (Plaintiff Walker); constructive discharge (Plaintiff Olson); and public disclosure of private facts.

**MEMORANDUM DECISION AND ORDER - 4**

With all this in mind, the Court understands Plaintiffs' claims against Defendants to be represented by the following matrix:

|  | Causes of Action | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| **Defendant** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| Sheriff Daryl Crandall |  |  |  |  |  | ✓ | ✓ |  |  |  |  |  |
| Owyhee County Sheriff's Office |  |  |  |  |  |  |  |  |  |  |  |  |
| Owyhee County | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |  | ✓ | ✓ |

In turn, following oral argument, the Court understands that Defendants' Motion for Summary Judgment addresses each of these claims

**B.   Motion for Summary Judgment: Standard of Review**

Summary judgment is used "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

However, the evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party (*see id*. at 255) and the Court must not make credibility findings. *Id*.  Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On

the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). A statement in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389 n. 3 (9th Cir. 1995).

### C.  State-Law Claims Against Defendant Owyhee County

#### 1.  Contract-Based, State-Law Claims

Defendant Owyhee County argues that Plaintiffs' contract-based, state-law claims should be dismissed because Plaintiffs were at-will employees under Idaho law. *See* Defs.' Mem. in

Supp. of Mot. for Summ. J., p. 15 (Docket No. 32, Att. 1) ("Here, Plaintiffs' claims, set forth as breach of contract, breach of covenant of good faith and fair dealing, breach of implied contract of employment, breach of implied contract - just cause required, and constructive discharge, fail as a matter of law because Plaintiffs were 'at-will' employees."). The Court agrees.

In Idaho, employment is at-will unless an employee is hired pursuant to a contract that specifies the duration of employment or limits the reasons for which an employee may be discharged. *See Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 387 (Idaho 2005). Thus, in the absence of an agreement limiting a party's right to terminate the employment relationship, they may terminate it at any time or for any reason. *See Mitchell v. Zilog, Inc.*, 874 P.2d 520, 523 (Idaho 1994); *see also Metcalf v. Intermountain Gas Co.*, 778 P.2d 744, 746 (Idaho 1989) ("Unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability."). "This rule reflects the judiciary's reluctance to bind employers and employees to an unsatisfactory and potentially costly situation, although we recognize that either party is likely to be damaged by an unforewarned termination of the employment relationship." *Id.*

Here, Plaintiffs' contract-based, state-law claims are premised upon the Owyhee County Personnel Handbook (the "Handbook"). *See, e.g.*, Pls.' Compl. at ¶¶ 16-20, 52-63, 79-100, and 154-162 (Docket No. 1). The Handbook reads in relevant part:

> **THE HANDBOOK DOES NOT CONSTITUTE A CONTRACT**
>
> The Handbook is not to be construed as a contract between any one or all of the Owyhee County employees and Owyhee County (County).

**MEMORANDUM DECISION AND ORDER - 7**

> Employees are **not contract employees,** but are employees **at will**. Employment-at-will means that the employer or the employee may terminate the employment relationship at any time, for cause or without cause. A county official with authority to select or discharge employees can discipline or discharge an employee without limitation upon his/her discretion to do so, subject to applicable principles of employment law. Such status may be changed only by a specific written contract. Any such specific contract of employment must be reduced to writing in contract terms, must name the individual employee or employees, and must bind such individual employee or employees as well as the County to contract terms. The contract document itself must be signed by the Board and the individual employee or employees. No action or document signed by the Board shall be considered an employment contract unless it satisfies all requirements of this section.
>
> ....
>
> The purpose of this grievance procedure is to maintain a productive, efficient and experienced work force, thereby enhancing the public welfare. Its purpose is also to protect the interest of the county so that capable and productive employees are not treated inappropriately by their superiors. NOTHING HEREIN SHALL BE CONSTRUED TO GRANT AN EMPLOYEE ANY RIGHT OR EXPECTATION OF CONTINUED EMPLOYMENT, TO LIMIT THE REASONS FOR WHICH AN EMPLOYEE MAY BE DISCHARGED, TO SPECIFY THE DURATION OF EMPLOYMENT OR TO IMPLY AN EMPLOYEE MAY ONLY BE DISCHARGED FOR CAUSE.
>
> ....
>
> As set forth in section II of this policy manual all employees work for the county "at-will" unless otherwise specified.

*See* Handbook at pp. 1, 30, & 35-36, attached as Ex. 34 to Crandall Aff. at ¶ 38 (Docket No. 32, Att. 5) (emphasis in original). Although being careful not to characterize the Handbook as a contract in and of itself, determining its scope turns on principles of contractual interpretation and will be examined accordingly in this limited instance. *See, e.g.*, *Metcalf*, 778 P.2d at 747 ("This Court has recognized that "[a]n employee's handbook can constitute an element of the

**MEMORANDUM DECISION AND ORDER - 8**

contract. Unless an employee handbook specifically negates any intention on the part of the employer to have it become a part of the employment contract, a court may conclude from a review of the employee handbook that a question of fact is created regarding whether the handbook was intended by the parties to impliedly express a term of the employment agreement.") (internal citations omitted).[2]

If a contract is clear and unambiguous, the determination of the contract's meaning and legal effect are questions of law, and the intent of the parties must be determined from the plain meaning of the contract's own words. *See City of Idaho Falls v. Home Indem. Co.*, 888 P.2d 383, 386 (Idaho 1995). If, however, the contract is deemed to be ambiguous, the interpretation of the contract document is a question of fact which focuses on the intent of the parties.[3] *See Independence Lead Mines Co. v. Hecla Mining Co.*, 137 P.3d 409, 413 (Idaho 2006). Whether a contract is ambiguous is a question of law; the relevant inquiry in determining whether a contract is ambiguous is the meaning intended by the parties at the time of contracting, not at some future time. *See id.*; *see also Lamprecht v. Jordan, LLC*, 75 P.3d 743, 746 (Idaho 2003).

Applying these standards, the Handbook clearly (and on multiple occasions) states that Owyhee County employees are at-will employees, capable of being terminated at any time, with or without cause. The Handbook is unambiguous as a matter of law in this respect; accordingly, effect must be lent to such language without attempting to decipher the underlying intent of its

---

[2] Once again, the Handbook unequivocally states that "**THE HANDBOOK DOES NOT CONSTITUTE A CONTRACT**. *See* Handbook at p. 1, attached as Ex. 34 to Crandall Aff. at ¶ 38 (Docket No. 32, Att. 5) (emphasis in original).

[3] The parties' intent is determined by considering "the contract as a whole, the language used in the document, the circumstances under which it was made, the objective and purpose of the particular provision, and any construction placed upon it by the contracting parties as shown by their conduct or dealings." *J.R. Simplot Co. v. Bosen*, 167 P.3d 748, 751 (Idaho 2006).

**MEMORANDUM DECISION AND ORDER - 9**

impacted parties, including, as Plaintiffs now argue, how the Handbook had been used over time to manage personnel decisions within the Owyhee County Sheriff's Office. *See, e.g.*, Pls.' Opp. to Defs.' Mot. for Summ. J., p. 7 (Docket No. 33) ("Defendants attempt to cite each place in the contract that claims each employee was 'at-will.' However, Defendants fail to contemplate that Sheriff Aman treated the Handbook as a contract. Being that it was treated as a contract, it is a contract and should be treated as such."). Said another way, it would be improper for this Court to ignore the Handbook's unambiguous language in favor of the parties' subsequent (misplaced) conduct and/or communications – indeed, Plaintiffs provide no legal authority to the contrary.

Because Plaintiffs' contract-based, state law claims are dependent upon alleged violations of the Handbook (in contrast, for example, to violations of statutory law), Defendants' conduct must naturally be measured against what the Handbook both permits and proscribes. The Handbook categorizes Plaintiffs in no uncertain terms as at-will employees. Under Idaho law generally, an employer may discharge an at-will employee at any time, for any reason, without incurring liability. *See supra* at p. 7; *but see infra* at pp. 10-11 (discussing limitations and restrictions on dismissing at-will employees). In other words, Plaintiffs' terminations and/or reassignments did not violate the Handbook's provision and, likewise, cannot operate as any basis for Plaintiffs' contract-based, state law claims – they are dismissed.

    2.    <u>Tort-Based, State-Law Claims</u>

        a.    *Wrongful Discharge in Violation of Public Policy*

The right to discharge an at-will employee is limited by considerations of public policy, such as when the motivation for the firing contravenes public policy. *See Mallonee v. State*, 84 P.3d 551, 621 (Idaho 2004); *see also Watson v. Idaho Falls Consol. Hosp., Inc.*, 720 P.2d 632,

637 (Idaho 1986) ("[An] employee may claim damages for wrongful discharge when the motivation for discharge contravenes public policy."). The determination of what constitutes public policy sufficient to protect an at-will employee from termination is a question of law. *Id*. The public policy exception to the employment at-will doctrine has been held to protect employees who refuse to commit unlawful acts, who perform important public obligations, or who exercise certain legal rights and privileges. *Id*. An employer may not discharge an at-will employee without cause when the discharge would violate public policy. *Id*. Once the court defines the public policy, the question of whether the public policy was violated is one for the jury. *See Smith v. Mitton*, 104 P.3d 367, 374 (Idaho 2004). Here, Plaintiffs bring a wrongful discharge in violation of public policy claim, alleging that, by terminating and/or reassigning them "based solely on [their] support of [Defendant Crandall's] incumbent opponent during an election, Defendants prevented them from engaging in protected speech under the United States and Idaho Constitutions. *See* Pls.' Compl. at ¶¶ 66 & 75 (Docket No. 1).

The Court recognizes the theoretical viability of Plaintiffs' wrongful discharge in violation of public policy, however dismisses it here on summary judgment for two reasons.

First, a close examination of the claim reveals that the allegations pertinent thereto are focused squarely upon Defendant Crandall's individual conduct. For example, Plaintiffs' Complaint reads in relevant part:

- The Defendant Crandall was aware that the Plaintiffs supported Sheriff Aman for re-election while Defendant Crandall conducted his own campaign as a fellow employee of the Defendants.

- Defendant Crandall's motivation for the termination, or termination then reassignment, of Plaintiffs was their political

**MEMORANDUM DECISION AND ORDER - 11**

> support of the incumbent candidate and their exercise of free speech and freedom of association.
>
> • Upon taking office, Defendant Crandall adopted a new department policy and mission for the [Owyhee County Sheriff's Office], including scrutinizing employee words and actions on duty and off, firing employees for "head games," requiring that employees act as though they were being videotaped, and telling employees that "[w]e are the sheriff, we are all judged on the actions of our co-workers."
>
> • The Defendant Crandall further expressed his [Owyhee County Sheriff's Office] policy as removing "cancer in this department" and stopping "secret squirrel."
>
> • The Defendant Crandall terminated the Plaintiffs in line with his policy expression to rid himself of employees who he believed could be potential political dissenters.
>
> • The termination of Plaintiff Bish in his position as Detective was determined to be "not a necessary position for the Office" by Defendant Crandall. Defendant Crandall told Plaintiff Bish in his termination letter that his decision was a reduction that was not subject to the grievance process. The Defendant County, through its Board of Commissioners reserves the right to make reductions.

*See id.* at ¶¶ 70-74 & 76.[4] Simply put, these allegations do not represent a claim against any Defendant other than Defendant Crandall and, because that claim has already been dismissed (*see supra* at pp. 2-3), it is no longer procedurally viable. To be sure, Defendants made the identical argument in their moving paperwork. *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 15, n.5 (Docket No. 32, Att. 1) ("Plaintiffs' state law claim of wrongful discharge in violation

---

[4] Against the balance of allegations relevant to Plaintiffs' wrongful discharge in violation of public policy claim, the Court disregards the final alleging paragraph where Plaintiffs claim that they "have suffered incidental and consequential damages as a result of the *Defendants'* termination in violation of public policy." *See* Pls. Compl. at ¶ 78 (emphasis added). Up to that point, the Defendants, collectively (or, even, Defendants other than Defendant Sheriff Daryl Crandall), were never mentioned in the context of the claim.

**MEMORANDUM DECISION AND ORDER - 12**

of public policy . . . only names Sheriff Crandall as the Defendant. Per this Court's previous Order, Sheriff Crandall was dismissed with respect to this claim."). Yet, Plaintiffs did not address this point in their own briefing, let alone dispute Defendants' position on this discrete point.

Second, even when assuming the claim's application beyond Defendant Crandall himself, it cannot be said that Plaintiffs' termination/reassignment violated public policy when the record reveals that the personnel decisions in question were made *before* Plaintiffs even engaged in any protected speech. *See infra* at pp. 16-18. This apparent sequence of events precludes a wrongful discharge in violation of public policy claim when the underlying decision now complained of is unrelated to the public policy Plaintiffs argue was violated. Absent this necessary temporal component, Plaintiffs cannot maintain their claim for wrongful discharge in violation of public policy.

### b. *Intentional Infliction of Emotional Distress (Plaintiff Walker)*

Like Plaintiffs' wrongful discharge in violation of public policy claim, Plaintiffs' intentional infliction of emotions distress claim specific to Plaintiff Tiffany Walker is directed at Defendant Crandall individually. For example, Plaintiffs' Complaint reads in relevant part:

- Plaintiff Walker was terminated on two occasions by Defendant Crandall.

- From one termination to the next, Defendant Crandall's conduct toward Plaintiff Walker was intentional or reckless.

- Defendant Crandall's conduct was extreme and outrageous.

- The Defendant Crandall had Plaintiff Walker watched and had local people or employees report to him about her daily activities and health.

**MEMORANDUM DECISION AND ORDER - 13**

- On at least one occasion, Defendant Crandall drove by her house to look for her car.

- The Defendant Crandall placed Plaintiff Walker with particular employees to set her up for possible disciplinary actions.

- When Plaintiff Walker accepted employment in dispatch, Defendant Crandall refused to allow her to continue to maintain a schedule that was compatible with her need for child care.

- Defendant Crandall's wrongful conduct caused the Plaintiff Walker's emotional distress.

*See* Pls.' Compl. at ¶¶ 124-131 (Docket No. 1). Again, these allegations do not amount to a claim against any Defendant other than Defendant Crandall. This claim has already been dismissed (*see supra* at pp. 2-3) and, therefore, Defendants' Motion for Summary Judgment is granted in this respect.[5]

    c. *Negligent Infliction of Emotional Distress (Plaintiff Walker)*

Like Plaintiffs' wrongful discharge in violation of public policy and intentional infliction of emotional distress claims, Plaintiffs' negligent infliction of emotional distress claim specific to Plaintiff Tiffany Walker is similarly directed at Defendant Crandall individually. For example, Plaintiffs' Complaint reads in relevant part:

- Defendant Crandall's acts as alleged in this Complaint were carried out intentionally, oppressively, maliciously and abusively for the purpose of vexing, annoying and harassing the Plaintiffs and in retaliation for their support for the incumbent Sheriff Aman.

- There exists a causal connection between the conduct of Defendant Crandall and the Plaintiff's injury.

---

[5] Additionally, Plaintiffs' briefing does not include any argument speaking to the viability of a continued intentional infliction of emotional distress claim against any of the Defendants.

**MEMORANDUM DECISION AND ORDER - 14**

- Defendant Crandall knew that Plaintiff Walker was a single mother who had to arrange for child care and support for herself and her daughter and should have known that successive terminations would cause her emotional distress.

- Defendant Crandall had Plaintiff Walker watched and took reports about her movements when she was off of work and engaged in other tracking activities that when disclosed to Plaintiff Walker would reasonably cause her emotional distress.

*See* Pls.' Compl. at ¶¶ 137 & 139-141 (Docket No. 1).[6] Once again, these allegations do not amount to a claim against any Defendant other than Defendant Crandall. This claim has already been dismissed (*see supra* at pp. 2-3) and, therefore, Defendants' Motion for Summary Judgment is granted in this respect.[7]

### d. Public Disclosure of Private Facts

Idaho recognizes the tort of invasion of privacy with four different categories, including public disclosure of private facts. *See Jensen v. State*, 72 P.3d 897, 902 (Idaho 2003). To make out a claim for public disclosure of private facts "there must be a public disclosure [and] the facts disclosed must be entitled to be private." *Hoskins v. Howard*, 971 P.2d 1135, 1141 (Idaho 1998). Additionally, "the matter made public must be one which would be offensive and objectionable to a reasonable man of ordinary sensibilities." *Baker v. Burlington N., Inc.*, 587 P.2d 829, 832 (Idaho 1978) (quoting *Peterson v. Idaho First Nat. Bank*, 367 P.2d 284, 287 (Idaho 1961)).

---

[6] Plaintiffs' Complaint also discusses "Defendants" generally (*see* Pls.' Compl. at ¶¶ 135 & 138 (Docket No. 1)), however, the thrust of the allegations applicable to Plaintiffs' negligent infliction of emotional distress claim is unquestionably directed at Defendant Crandall.

[7] Additionally, Plaintiffs' briefing does not include any argument speaking to the viability of a continued negligent infliction of emotional distress claim against any of the Defendants.

**MEMORANDUM DECISION AND ORDER - 15**

Other than the general allegations contained in their pleadings, Plaintiffs have not set forth any focused argument speaking to the legitimacy of their public disclosure of private facts claim – no deposition testimony or affidavits alleging that Defendants publicly disclosed any private facts to anyone.[8] Without such evidence in the record for this Court to consider, Plaintiffs' intentional tort claim must be dismissed as Plaintiffs have failed to carry their burden to establish that genuine issues of material fact exist regarding the disclosure of private facts.

D.    **Federal Claims Against Defendant Crandall and Defendant Owyhee County**

    1.    <u>42 U.S.C. § 1983 - Free Speech</u>

"It is well settled that the state may not abuse its position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest.'" *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Courts employ a sequential five-step inquiry to determine whether a public employee has alleged a violation of his First Amendment rights a result of government retaliation for his speech: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the

---

    [8] The Court notes that Plaintiffs have attached the complete deposition transcripts of Plaintiffs James Bish, Christopher Even, Bruce Cameron, Sherry Olson, and Tiffany Walker. *See* Docket No. 33, Atts. 9-13. Without any focused reference to the depositions vis à vis Plaintiffs' public disclosure of private facts claim (or any other claim), the Court will not take up any implicit invitation to scour these transcripts to find a question of fact specific to the(se) claim(s). *See supra* at p. 6 ("[T]he Court is 'not required to comb through the record to find some reason to deny a motion for summary judgment.'") (internal citations omitted)).

**MEMORANDUM DECISION AND ORDER - 16**

adverse employment action even absent the protected speech. *Id*. The plaintiff bears the burden of proof on the first three areas of inquiry, but the burden shifts to the government to prove the last two. *Id*. at 1071. If the plaintiff fails to carry his burden at any step, qualified immunity should be granted to the defendant. *Id*. at 1070-72.

To show that retaliation was a substantial or motivating factor behind an adverse employment action, a plaintiff can (1) introduce evidence that the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for the adverse action were false and pretextual. *See Anthoine v. N. Cent. Counties Consort.*, 605 F.3d 740, 750 (9th Cir. 2010) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003)).

Defendants argue that Plaintiffs' protected speech (their support for former Owyhee County Sheriff Gary Aman) could not have been a substantial or motivating factor in Defendant Crandall's staffing decisions because "[Defendant] Sheriff Crandall decided that Plaintiffs would be reassigned, or terminated if they chose not to accept the assignment, in April 2008, before Plaintiffs wrote the letters in May 2008." *See* Defs.' Mem. in Supp. of Mot. for Summ. J., p. 16 (Docket No. 32, Att. 1). Advancing this argument, Defendants offer the following factual support:

- In April 2008, Sheriff Crandall determined that, in the event he was elected the Owyhee County Sheriff, he would reassign Plaintiffs Bish and Even.

- In February 2008, Sheriff Crandall determined that, in the event he was elected the Owyhee county Sheriff, he would terminate Plaintiff Bruce Cameron's employment as Chief Deputy Sheriff of Owyhee County.

**MEMORANDUM DECISION AND ORDER - 17**

•  In April 2008, Sheriff Crandall determined that, in the event he was elected the Owyhee County Sheriff, he would reassign Plaintiffs Olson and Walker from their then positions with the Owyhee County Sheriff's Office to dispatch.

*See* Defs.' Stmt. of Material Facts at ¶¶ 4-6 (Docket No. 32, Att. 2) (citing 1/7/11 Crandall Aff. at ¶¶ 3, 11, 17, 23, & 29 (Docket No. 32, Att. 3)). Plaintiffs, however, offer nothing to contest Defendants' account of the timing of Defendant Crandall's actions.

Without these references to the record, there are no issues of fact precluding summary judgment on Plaintiffs' free speech claim.[9] Moreover, Plaintiffs neither indicated that it was unable to present facts essential to justify its opposition pursuant to FRCP 56(d) nor attempted to supplement the record at oral argument. As a result, Plaintiffs' free speech claim is dismissed.

2.  42 U.S.C § 1983 - Due Process

A Section 1983 claim based upon procedural due process contains two elements: (1) a deprivation of liberty or property interest protected by the Constitution; and (2) a denial of adequate procedural protections. *See Brewster v. Bd. of Educ. Of the Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). To state a claim under the Due Process Clause, Plaintiffs must first establish they possessed a property interest, deserving of constitutional protection. *Id.*; *see also Gilbert v. Homar*, 520 U.S. 924, 928-29 (1997). If a property interest

---

[9] The allegations in Plaintiffs' unverified Complaint, while potentially sufficient to overcome a motion to dismiss, do not constitute evidence for the purpose of raising an genuine issue of fact. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."); *see also, e.g.*, *Flaherty v. Warehousemen, Garage & Serv. Station Employees' Local Union No. 334*, 574 F.2d 484, 486 n.2 (9th Cir. 1978) (assertions made in complaint, legal memoranda, or oral argument are not evidence and do not create issues of fact).

**MEMORANDUM DECISION AND ORDER - 18**

exists, the essential requirements of due process are notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill et al.*, 470 U.S. 532, 546 (1985).

Plaintiffs allege that they "were each terminated without notice, and without a hearing before their termination in violation of Idaho and United States Constitutions." *See* Pls.' Compl. at ¶ 112 (Docket No. 1). "Where, however, a state employee serves at will, he or she has no reasonable expectation of continued employment, and thus no property right." *Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003). The undersigned has already determined Plaintiffs to be at-will employees (*see supra* at pp. 9-10); therefore, Plaintiffs have no property interest in their continued employment that could support a due process claim. As a result, Plaintiffs' due process claim is dismissed.

### III.  ORDER

Based on the foregoing IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 32) is GRANTED.

**On or before July 27, 2011, the parties are to notify the Court concerning the status of the action in relation to the August 29, 2011 trial date.  Unless otherwise notified, the Court will vacate the trial date and enter a corresponding judgment, consistent with this Memorandum Decision and Order.**

DATED:  **July 20, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge